## Charles E. Whitton v. Laura B. Whitton.

1. JUDGMENTS BY CONFESSION—*Motion to Open—Burden of Proof.*—On a motion to open a judgment entered upon a judgment note the burden of impeaching the judgment is upon the party making the motion, and where it appears from his affidavits in support of his motion that he will, if let in to plead, be unable to sustain his proposed defense, the motion is properly denied.

2. SAME—*Motion to Open—Equitable Jurisdiction.*— A motion to open a judgment entered by confession, and to let the defendant in to plead, comes within the equitable jurisdiction of the courts of law over such judgment, and should be freely exercised to allow it in a clear case, but not otherwise.

Motion, to open a judgment, etc. Appeal from the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 6, 1895.

D. D. EVANS and WILL BECKWITH, attorneys for the appellant.

E. WINTER, attorney for appellee.

MR. PRESIDING JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

On October 17, 1894, appellee caused to be entered up in open court a judgment for $3,383, and costs against appellant, by confession under a power of attorney, upon the note to which it was attached and which is as follows:

"$1,550.          HOOPESTON, ILL., March 1, 1888.

Five years after date we or either of us promise to pay to the order of Laura B. Whitton, guardian, fifteen hundred and fifty dollars, value received, with six per cent interest per annum from date, payable annually, and ten per cent attorney's fees in case of collection by suit at law."

Then follows the power of attorney to confes judgment, in the usual form, and the attestation clause and date, "Witness our hands and seals this 1st day of March, A. D. 1888," with signature and seal of appellant alone. The amount of the judgment includes $216.63 for attorney's fees. Execution issued thereon January 21, 1895, which was served on appellant February 9th, immediately after which he commenced this proceeding, which is a motion to open the judgment and let him plead. On hearing it the court allowed the plaintiff to remit $61.63, to be credited on the judgment as of its date, and then overruled the motion; from which order defendant took this appeal.

The reasons assigned for the motion were that he had not been served with process, nor had his day in court; that he had a meritorious defense to the whole of said note, in that it was never delivered to the plaintiff, was never completely executed, and was wholly without consideration. The evidence in support of them consists of affidavits of himself alone. In opposition thereto were those of appellee, her son, and two attorneys—the latter being only to prove that appellant was informed of the entry of the judgment on the 15th day of December, being still of the term at which it was entered. In a subsequent affidavit appellant admitted that he did then get notice of the judgment, but was advised by an attorney named that no action on his part could be taken in reference to it until execution issued.

It appears that the parties are husband and wife. They were married December 16, 1884. She was then a widow, residing with her six minor children on an eighty acre farm in Iroquois county, of which her former husband died seized. Under an order of the County Court she sold it on March 5, 1888, for $3,600, and received the price. The decree gave her $500 for her dower, and $1,500 for improvements thereon made by herself, leaving $1,550 for the children. On the same day she purchased another farm of 217 acres, in Vermilion county, for $7,000, paying $3,500 (including a mortgage of $400, which she assumed), out of the proceeds of of the sale, giving a mortgage back for the residue, and taking the deed in her own name. About January 1, 1891, she conveyed to appellant eighty acres of it, for which she received nothing at that time.

So far the parties agree. But as to everything else touching the merits of this case they widely differ. His statement is that in view of his money and labor spent upon the farm, by which he paid off the mortgage assumed by her and made improvements to the amount and value of over $2,000, he was not satisfied to have the title entirely in his wife, and therefore had her make the conveyance of eighty acres to him. Soon afterward she began to insist that they should either pay the children their share of said eighty acres, viz.: $1,500, or give them something to show it was due to them. He didn't owe them anything, but to stop the family unpleasantness and keep the peace, finally determined, without saying anything to her, that he would assume one-half if she would the other. Some time during the summer of 1893 he had the judgment note drawn up, dated back to about the time she received the money for the Iroquois farm, and signed it, intending to have her sign it also. When he got home he pulled it out, showed it to her and said : " Here is a note that will show we owe the children;" but before he could request her to sign it she said : " Their money is in the land; I don't want anything to do with any note." Whereupon he put it back in his pocket and never saw it again until he saw it in the files of this case. He never deliv-

ered it to her nor authorized such delivery. How it came
into her possession he did not know. He was living with her
then, in the same house, and has been ever since. It was
contrary to his intention that it ever should come into her
possession without her signature as a joint maker. When she
refused to have anything to do with the note the matter
passed out of his mind and he thought no more about it until
he learned of this judgment.

Appellee's story, affecting the merits, so far as it differs
from his, is in substance, that when they were married he
had no money. That when the note she had given for the
deferred payment on the 217 acres, secured by mortgage,
became due she was obliged to borrow $3,200 to meet it,
and to give a new mortgage as security. When the papers
were made out and ready to be executed appellant refused
to join her in the execution thereof unless she would agree
to convey to him eighty acres of the land, worth at a fair
valuation $50 per acre; which she did upon his agreement
to execute to her, as guardian of the minor children, his
note for $1,550 with interest at six per cent from the time
their money was invested in the land. He delayed doing
so from time to time. It was never suggested by either of
them that she should join as a maker of such note, but on
the contrary, it was understood that he should be alone
liable for the amount of it. Ever since he executed it the
note has been in her possession as guardian. She has often
talked with him about it and urged him to pay it, but been
put off by him until she was compelled to sue. He never
paid anything toward the purchase of the land or any part
of it; has always complained of being in ill health and un-
able to perform hard manual labor, and has mostly been
engaged in overseeing the farm. All the improvements
made and indebtedness paid upon it has been paid from its
products, and her sons—Clarence, who was sixteen, and
William, who was thirteen years of age when they moved
upon it, and Arthur, who died July 14, 1894, aged eighteen
years—have remained with her, and labored early and late
in improving the land and raising crops thereon, and per-

Whitton v. Whitton.

formed the hard manual labor necessary to raise them. She has not yet made her final settlement as guardian, but has been advised that it is necessary, and in order to make it she is desirous of collecting the note in judgment. She denies the statement by appellant that she ever said to him that the children's money was in the land and she didn't want anything to do with any note.

Letters of guardianship, issued to her September 19, 1887, by the County Court of Iroquois County, were in evidence.

The affidavit of her son Clarence corroborates that of his mother as to the value of the eighty acres when they were conveyed to appellant; how the means to pay off the $400 mortgage and make the improvements were obtained; the labor of the boys, and appellant's complaints of his ill health and inability to work. He further swears that he has often seen the note in his mother's possession during the last year or two, and he heard her and appellant talking about it.

Appellant's further affidavit denies that the means to pay off the incumbrance and make the improvements were derived from the products of the farm, and that he complained of his health as alleged, and states that until the last two years his general health was good; that during those two he has taken an active part in the work of the farm, and ever since he went on it performed all kinds of hard farm labor.

The foregoing embraces substantially all the evidence. From the statement of appellant himself, it seems highly improbable that if let in to plead he will be able to produce a single additional witness or any other evidence as to the decisive points in the case, viz., the complete execution, actual delivery and real consideration of the note. The burden of proof to impeach it will rest upon him. Against the showing made by its production and the positive testimony of two witnesses as to appellee's possession and appellant's knowledge of the fact, what can he offer as a preponderance except his own uncorroborated and somewhat unreasonable statement? With full opportunity and urgent occasion to do so, he does not make even a bare denial of

the sworn statements as to the value of the land he got, and his pecuniary condition at the time of his marriage. The reasonable inference from what he states and omits to state, is that although a single man, of general good health and ability to do hard work, he had lived to be the husband of a widowed mother of six children, without accumulating a dollar or a dollar's worth of anything but his clothes. How, then, except from the products of the farm, had he become able, so soon after his marriage, to pay off an incumbrance and put improvements upon it to an amount and value that would be a fair consideration for land worth $4,000? His wife was already bound, and with sureties, to the children for the full amount of this note. If his intention was to relieve her of half, why didn't he make his note to her, not as guardian, for only $775? If she refused to join on the one he made, as she agreed, why didn't he at once destroy it? Did he put it in his pocket, uncanceled, and never again see it or talk of it or think of it for more than a year and after it became merged in a judgment against him, although his wife had been and was disturbing the peace of the family by persistently insisting that they— he and she—should either pay the children the amount of it, or give them something to show and secure the debt? Did she, though so insisting, flatly refuse to have it done on the instant that he offered to do it?

Further comment upon his statement would be useless. It appears to be highly improbable, and so far as it enables us to reasonably anticipate, would not be corroborated on a trial. On the other hand, that of appellee is already corroborated and seems natural and probable in itself. If she conveyed to appellant $4,000 worth of the land in which her children's money, due from her, had been invested, without other consideration than is here shown, she might well require that he should become responsible for and secure the payment of that debt. That he did, the note made to her *as guardian*, is natural and very persuasive proof. Why should she have joined in it, thereby promising in one capacity, to pay to herself in another, for her children, what

she was already otherwise bound to pay them? He had participated with all the freedom and fullness of a husband's right in the products of the entire farm, and the labor of her children thereon; as it was, it left him the value of nearly $2,500 in the eighty acres, and a contingent dower right in the residue, and therefore no impressive occasion for sympathy in his application to be relieved from its apparent obligation.

Such a motion as this is within the equitable jurisdiction of the courts of law over such judgments, and should be freely exercised to allow it in a clear case, but not otherwise. It is not specially favored. The presumptions are against it. Such a contract as is imported by the instrument here in question is legal, and on its face authorizes judgment without process. It is not equitable to nullify it or suspend its operation, without good cause, *dehors*, clearly shown. The *ex parte* affidavit of the obligor or promisor alone ought not to be held sufficient, as a rule. The party in adverse interest should also be heard where it is practicable, and the determination, which rests in sound judicial discretion, should be reversed only in case of apparent abuse of that discretion. Citation of authority for these propositions is deemed unnecessary. In this case we see no such abuse.

It is said the court erred in allowing the *remittitur* of the excess awarded for attorney's fees. If so it was not for want of power to allow it, and if a mistake in judgment, it favored appellant, who therefore should not complain of it.

So also, it is said that the judgment was erroneous in awarding costs, for the reason that the warrant of attorney did not expressly authorize a judgment for costs. No reason is perceived or suggested why costs should not follow a judgment for damages by confession as in other cases, by force of the statute. The order of the court below, overruling appellant's motion, will be affirmed.